**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-1758
_____

ROBERT FURGESS,

Appellant

v.

THE PENNSYLVANIA DEPARTMENT OF
CORRECTIONS

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D. C. Civil Action No. 1-17-cv-00326)
District Judge: Honorable Susan Paradise Baxter

_____

Argued on January 24, 2019

Before:  JORDAN, KRAUSE and ROTH, Circuit Judges

(Opinion filed: August 8, 2019)

John F. Mizner, Esq.        (**ARGUED**)
Mizner Law Firm
311 West Sixth Street
Erie, PA 16507

      Counsel for Appellant


Kemal A. Mericli, Esq.     (**ARGUED**)
Daniel B. Mullen, Esq.
Office of Attorney General of Pennsylvania
1251 Waterfront Place
Pittsburgh, PA 15222

      Counsel for Appellee


Erin H. Flynn, Esq.
Christine A. Monta, Esq.
United States Department of Justice
Civil Rights Division, Appellate Section
P.O. Box 14403
Ben Franklin Station
Washington, DC 20044

      Counsel for Amicus Appellant

_____

OPINION
_____

ROTH, Circuit Judge

Robert Furgess, an inmate in a Pennsylvania state prison, suffers from a disability and was unable to take a shower for three months because the prison staff did not provide him with a handicapped-accessible shower facility. He subsequently brought claims against the Pennsylvania Department of Corrections (PDOC) under Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act (RA). Both the ADA and the RA require public entities, including state prisons, to provide, in all of their programs, services, and activities, a reasonable accommodation to individuals with disabilities. The District Court dismissed Furgess's complaint with prejudice on the ground that, under case law from the United States District Court of the Western District of Pennsylvania, the provision of showers is not a program, service, or activity under the ADA or the RA. For the reasons that follow, we will vacate the District Court's dismissal of Furgess's complaint and remand the case for further proceedings.

I.[1]

Furgess has myasthenia gravis (MG), a neuromuscular disease that inhibits his ability to see, walk, speak, and lift. He arrived at the State Correctional Institution at Albion, Pennsylvania, (SCI Albion) in 2014 and requested

---

[1] This recitation of the facts accepts as true the well-pleaded allegations of Furgess's complaint, as required upon reviewing dismissal on a 12(b)(6) motion. *See McTernan v. City of York, Pa.*, 577 F.3d 521, 526 (3d Cir. 2009).

accommodations for his disability. SCI Albion subsequently provided him with an accessible shower stall, moved his cell closer to the medical and dining halls, and fitted him for leg braces. On December 10, 2015, Furgess was moved to the Restrictive Housing Unit (RHU) at SCI Albion,[2] which was not equipped with handicapped-accessible shower facilities. Furgess repeatedly requested to be provided with an accessible shower but he was not. By February of 2016, Furgess had not taken a shower. The SCI Albion staff alerted RHU Lieutenant Barner of Furgess's disability, but Furgess still was not provided a shower. By March 2016, the Superintendent of SCI Albion had become aware that Furgess had not been able to shower. He questioned Lieutenant Barner. Barner told the Superintendent that the staff would escort Furgess to the infirmary shower facilities, which were accessible. The staff did not, however, do so. On March 7, Furgess filed a grievance, requesting a handicapped-accessible shower facility. Although his grievance was rejected, he was moved to a handicapped-accessible cell but he still was not provided access to a shower. On March 16, for the first time in over three months, Furgess was escorted to a shower. Unfortunately, the shower was not handicapped-accessible. The staff gave Furgess an armless plastic chair on which to sit during the shower. Because the hot water exacerbated the symptoms of Furgess's MG, he tried to leave the shower room. Due to the lack of rails or safety bars, he slipped and was knocked unconscious. As a result of this fall,

---

[2] The complaint does not indicate why Furgess was moved to the RHU and, in their briefs, the parties dispute whether he was transferred for disciplinary or non-disciplinary reasons. The reason Furgess was housed in the RHU is irrelevant to our analysis of his claims, as discussed in Section III(B).

he has been confined to a wheelchair and suffers from headaches and back pain.  Furgess filed another grievance on March 25 claiming that he had been denied accommodation for his disability.  The grievance was denied on April 18.

Furgess brought this action against the PDOC, alleging it violated his rights under Title II of the ADA and Section 504 of the RA by failing to provide him with an accessible shower.  The PDOC moved to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that Furgess had failed to state a claim because a shower is not a "service, program, or activity" under either statute.  The District Court agreed and dismissed Furgess's complaint with prejudice.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  Our review of an order granting a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is plenary.[3]  We accept all factual allegations as true and determine whether "under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[4]

## III.

We consider the Title II and Section 504 claims together because "the substantive standards for determining

---

[3] *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008).
[4] *Id.* at 233.

5

liability are the same."[5]  To state a claim under either the ADA or the RA, Furgess must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability.[6] Furgess must also show intentional discrimination under a deliberate indifference standard because he seeks compensatory damages.[7]  The PDOC does not contest that Furgess is a qualified individual with a disability.  It only cursorily defends the District Court's holding that showers are not programs, services, or activities.  Its primary argument on appeal is that Furgess was not denied a shower "by reason of" his disability.  Rather, according to the PDOC, he was deprived of a shower because he was housed in the RHU, which did not have accessible shower facilities.

Our analysis proceeds in two parts.  First, we address whether the provision of showers is a program, service, or activity under Title II and Section 504.  Next, we turn to the

---

[5] *McDonald v. Com. of Pa., Dep't of Pub. Welfare Polk Ctr.*, 62 F.3d 92, 95 (3d Cir. 1995).

[6] *Chambers ex rel. Chambers v. Sch. Dist. Of Phila. Bd. Of Educ.*, 587 F.3d 176, 189 n.19 (3d Cir. 2009).

[7] *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013).

PDOC's central argument, that Furgess did not suffer the deprivation of a shower due to his disability.[8]

## A. IS THE PROVISION OF A SHOWER A PROGRAM, SERVICE OR ACTIVITY?

The District Court dismissed Furgess's complaint on the ground that the PDOC's alleged failure to accommodate his disability did not preclude him from participating in a program, service, or activity because showers are not a program, service, or activity. The District Court's conclusion, and the cases supporting it, are contrary both to the statutory language of the RA and the ADA and to the weight of case law.

Looking first to the statutory language, Section 504 of the RA defines a "program or activity" quite broadly to include "*all* of the operations of" a state instrumentality.[9] We have confirmed these terms' broad meaning, calling them "all-encompassing."[10] The ADA does not define "services, programs, or activities," but both Congress and this Court have recognized that Title II provides at least the same degree

---

[8] The PDOC does not contest that Furgess has exhausted his administrative remedies, or that state prisons are subject to the ADA and the RA. *See* 29 U.S.C. § 794(b)(1)(A) (any "department, agency, special purpose district, or other instrumentality of a State or local government" is subject to the RA); *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (state prisons are subject to the ADA).

[9] 29 U.S.C. § 794(b) (emphasis added).

[10] *Yeskey v. Com. of Pa. Dep't of Corr.*, 118 F.3d 168, 170 (3d Cir. 1997), *aff'd sub nom.* 524 U.S. 206 (1998).

of protection as Section 504.[11]  Thus, the phrase "service, program, or activity" under Title II, like "program or activity" under Section 504, is "extremely broad in scope and includes anything a public entity does."[12]  A prison's provision of showers to inmates fits within this expansive definition, as it undoubtedly is something "a public entity does" and is one "of the operations" of the prison.

Indeed, Department of Justice guidance on Title II regulations explicitly refers to a prison's provision of hygiene as being included under the statute's purview.[13]  Specifically, the DOJ explains that corrections systems are unique facilities under Title II because inmates cannot leave, and thus prisons must address the needs of inmates with disabilities by providing "accessible toilet and shower facilities, devices such as a bed transfer or a shower chair, and assistance with hygiene methods for prisoners with physical disabilities."[14]

The weight of the case law also supports our conclusion that the provision of a shower is a service, program, or activity.  First, in *Jaros v. Illinois Department of Corrections*,[15] the Seventh Circuit held that meals and

---

[11] The ADA should not be "construed to apply a lesser standard than the standards applied under [the RA]."  42 U.S.C. § 12201(a); *see also McDonald*, 62 F.3d at 94-95.

[12] *Disability Rights N.J., Inc. v. Comm'r, N.J. Dep't of Human Servs.*, 796 F.3d 293, 301 (3d Cir. 2015).

[13] We accord these regulations "controlling weight unless [they are] arbitrary, capricious, or manifestly contrary to the statute." *See Yeskey*, 118 F.3d at 171.

[14] 28 C.F.R. pt. 35, App. A, at 663 (2017).

[15] 684 F.3d 667 (7th Cir. 2012).

showers made available to inmates are programs or activities under Section 504.[16]  Second, in providing examples of what constitutes a program or activity that prisons provide to inmates, the Ninth Circuit listed "toilet[s] and bathing facilities."[17]  Third, the First Circuit reversed a district court's grant of summary judgment for a prison on the grounds that an issue of material fact remained as to whether prison officials prevented an inmate from using a showering chair, implying that the provision of showers is a program, service, or activity under Title II.[18]  Finally, in dictum, the Supreme Court has stated that a prison's refusal to accommodate inmates' disabilities "in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs" constitutes a denial of the benefits of a prison's services, programs, or activities under Title II.[19]

The District Court, along with the three decisions from the Western District of Pennsylvania it relied on, failed to engage in any statutory or regulatory analysis in holding that showers are not programs, services, or activities.  Rather, these decisions improperly relied on a Seventh Circuit case, *Bryant v. Madigan*.[20]  In *Bryant*, an inmate claimed that a prison violated the ADA when it (1) failed to install

---

[16] *Id.* at 672 ("Although incarceration is not a program or activity, the meals and showers made available to inmates are.").

[17] *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1068 (9th Cir. 2010).

[18] *Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 287-88 (1st Cir. 2006).

[19] *United States v. Georgia*, 546 U.S. 151, 157 (2006).

[20] 84 F.3d 246 (7th Cir. 1996).

guardrails on his bed, and as a result, he fell out of bed and broke his leg due to leg spasms caused by his paraplegia, and (2) denied him pain medication for his broken leg.[21] The court characterized both allegations as ones of improper medical treatment of his paraplegia and held that the inmate's claims failed because "[t]he ADA does not create a remedy for medical malpractice" in prisons.[22] The court went on to explain that "incarceration, which requires the provision of a place to sleep, is not a 'program' or 'activity.' Sleeping in one's cell is not a 'program' or 'activity.'"[23] Similarly, the Western District of Pennsylvania cases characterize the failure to provide an accessible shower as medical treatment and conclude that showers are not programs, services, or activities.[24]

The problem with these cases' analysis is that complaints about not being provided an accessible shower are not allegations of medical malpractice or disagreements about medical treatment. They are requests for reasonable

---

[21] *Id.* at 247-48.

[22] *Id.* at 249.

[23] *Id.*

[24] *Thomas v. Pa. Dep't of Corr.*, 615 F. Supp. 2d 411, 427 (W.D. Pa. 2009); *see also Harris v. Giroux*, No. CV 16-38, 2017 WL 3075099, at *9 (W.D. Pa. July 19, 2017) (holding that plaintiff failed to state a claim because showers are not programs or activities) (citing *Thomas*, 615 F. Supp. at 414); *Evans v. Rozum*, No. CIV.A. 07-230J, 2008 WL 5068963, at *9-10 (W.D. Pa. Nov. 24, 2008) (holding that being denied an accessible shower does not state a claim as a matter of law and stating "[s]imilarly here, showering, defecating, etc., is no more a program or activity than is sleeping").

accommodations so that inmates with disabilities can take a shower—just like able-bodied inmates. Tellingly, the Seventh Circuit itself has not relied on *Bryant* when deciding if showers constitute programs, services, or activities. As noted above, the Seventh Circuit answered this question in the affirmative in *Jaros*.

We conclude that provision of showers is a part of the programs, activities, or services referred to in the ADA and the RA.

## B.  DID FURGESS SUFFER DISCRIMINATION BECAUSE OF HIS DISABILITY?

Next, we address the PDOC's primary argument on appeal—that Furgess has not alleged he suffered discrimination "by reason of his disability." The PDOC contends that Furgess was deprived of a shower because his own misconduct landed him in the RHU, which lacked accessible shower facilities, not because the PDOC intentionally discriminated against him on the basis of his disability. It is not clear whether the PDOC's argument goes to causation, intent, or both, but either way, its argument is unconvincing. Furgess's complaint alleges both causation and the requisite intent, deliberate indifference.

11

As to causation, the sole cause of Furgess's deprivation of a shower was his disability.[25] The PDOC's argument to the contrary fails because it conflates the alleged discriminatory action—failure to accommodate by not making the RHU showers handicapped-accessible—with the causation element of Furgess's claims. In other words, the PDOC's transfer of Furgess to the RHU cannot serve as a superseding or intervening "cause" of the lack of a shower that would defeat his claims.

The PDOC tries to convince us that Furgess was in the RHU because of a disciplinary infraction, and that but-for his alleged misconduct, he would not be in the RHU and thus deprived of a shower. But the reason why Furgess was housed in the RHU is irrelevant. A prisoner's misconduct does not strip him of his right to reasonable accommodations, and a prison's obligation to comply with the ADA and the RA does not disappear when inmates are placed in a segregated housing unit, regardless of the reason for which they are housed there. As the ADA's regulations make clear, the PDOC's failure to equip the RHU with accessible showers

---

[25] Causation standards are different under the ADA and RA—under the RA, the disability must be the sole cause of the discriminatory action, while the ADA only requires but-for causation. *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 236 n.11 (3d Cir. 2013). Based on the facts as alleged in the complaint, Furgess has sufficiently alleged causation under both standards.

12

does not excuse the prison from its duty to reasonably accommodate prisoners with disabilities.[26]

Furgess has also alleged intentional discrimination, which, in this Circuit, may be satisfied by a showing of deliberate indifference.[27]  Under this test, Furgess must allege that (1) the PDOC had "knowledge that a federally protected right is substantially likely to be violated," (i.e. knowledge that the failure to provide Furgess with an accessible shower likely violated his right to reasonable accommodations of his disability), and (2) the prison failed "to act despite that knowledge."[28]

As to the first prong, there are multiple allegations that the PDOC knew about Furgess's need for an accessible shower facility.  First, at the time that Furgess was held in the

---

[26] 28 C.F.R. § 35.152(b)(1) ("Public entities shall ensure that qualified inmates or detainees with disabilities shall not, *because a facility is inaccessible to or unusable by individuals with disabilities*, be excluded from participation in, or be denied the benefits of, the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.") (emphasis added).

[27] *S.H. ex rel. Durrell*, 729 F.3d at 263 ("We now follow in the footsteps of a majority of our sister courts and hold that a showing of deliberate indifference may satisfy a claim for compensatory damages under § 504 of the RA and § 202 of the ADA.").  The PDOC acknowledges that this is the standard to show intentional discrimination, but it discusses discriminatory animus throughout its brief, only mentioning deliberate indifference in a footnote.

[28] *Id.* at 265.

general prison population, he requested and was granted an accessible shower stall. Second, after he was placed in the RHU, he requested an accessible shower multiple times. Third, the medical staff as well as the RHU Lieutenant and the Superintendent knew that Furgess had not been able to shower because the RHU showers were not handicapped-accessible. It is clear from the above that the PDOC knew that Furgess required a handicapped-accessible shower and that by failing to provide him with one, his right to a reasonable accommodation of his disability was likely to be violated. The second prong, failure to act, is also adequately pled. For three months, the PDOC did not provide him with any accommodation that would allow him to shower; when they did bring him to a shower, it was not handicapped-accessible. We conclude that these allegations constitute deliberate indifference.

The PDOC cites *Thomas v. Pennsylvania Department of Corrections*,[29] in which the plaintiff claimed that the prison violated the ADA by providing him with a replacement prosthetic leg that was inferior to his old one.[30] The district court held that the replacement prosthetic was a reasonable accommodation of his disability, and even if the prosthetic was "inferior," the prison's provision of the prosthetic was not "by reason of his disability" because the Department of

---

[29] 615 F. Supp. 2d 411 (W.D. Pa. 2009).
[30] *Id.* at 423-24.

14

Corrections provides only one type of prosthesis.[31] Thus, Thomas was accommodated without discrimination, and we find it distinguishable.

For the above reasons, we hold that Furgess has adequately alleged that he was denied a shower "by reason of" his disability and that the PDOC was deliberately indifferent in failing to provide him with a handicapped-accessible shower.

## IV.

We vacate the District Court's dismissal of Furgess's complaint and remand for further proceeding consistent with this opinion.

---

[31] *Id.* at 425-26. The PDOC also cites *Strongminger v. Brock*, which is an unpublished case from the Seventh Circuit; it held, under a summary judgment standard, that the inmate's claim failed because the "prison's actions rose at worst to the level of negligence." 592 F. App'x. 508, 511-12 (7th Cir. 2014). This case is distinguishable from Furgess's case and, at any rate, not binding on us.

15